UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TAYLOR,<br><br>        Plaintiff,<br><br>   v.<br><br>WONG, et al.,<br><br>        Defendants. | No. 2:17-cv-1758 MCE KJN P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

I. <u>Introduction</u>

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies. (ECF No. 25.) Also pending is defendants' motion to stay discovery pending resolution of the summary judgment motion. (ECF No. 26.)

On February 19, 2019, plaintiff filed a motion for summary judgment. (ECF No. 44.) The undersigned construes plaintiff's motion for summary judgment to be plaintiff's opposition to defendants' summary judgment motion.

For the reasons stated herein, the undersigned recommends that defendants' summary judgment motion be granted. Defendants' motion to stay discovery is denied as unnecessary.

////

1

II. <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).

"Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp.</u>, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on February 14, 2018 (ECF No. 14), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

### III. Legal Standard for Exhaustion of Administrative Remedies

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S. Ct. 1850, 1857, 1859 (2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

As the U.S. Supreme Court recently explained in Ross, 136 S. Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.... [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. Reyes

4

v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process).

IV. Plaintiff's Allegations

This action proceeds on the first amended complaint, filed October 16, 2017, against defendants Dr. Wong and Nurse Duncan. (ECF No. 9.) All relevant events occurred at Mule Creek State Prison ("MCSP").

Plaintiff alleges that he suffers from hypertension, of which both defendants are aware. (Id. at 2.) Plaintiff alleges that on July 26, 2017, defendant Wong discontinued plaintiff's treatment and prescriptions for hypertension. (Id.) Plaintiff alleges that he then made defendant Duncan aware of his untreated condition. (Id. at 2-3.) Plaintiff alleges that defendant Duncan failed to prescribe medication, set up appointments or alert a doctor about plaintiff's untreated condition. (Id. at 3.) Plaintiff alleges that on August 13, 2017, as a result of his untreated condition, he had a dizzy spell and fell down a flight of stairs. (Id. at 3.)

IV. Relevant Time Period for Administrative Exhaustion

Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199–201 (9th Cir. 2002) (per curiam). If, however, a plaintiff files an amended complaint adding *new* claims, the plaintiff may proceed on the *new* claims if those claims were fully exhausted before tendering the amended complaint for filing. Rhodes v. Robinson, 621 F.3d 1002, 1006-07 (9th Cir. 2010) (emphasis added). As long as those new claims are fully exhausted at the time the amended complaint is filed, it does not matter whether the new claims arose before or after the date on which the initial complaint was filed; the claims can proceed as long as they are *new claims that were not alleged in the initial complaint*, and are fully exhausted prior to the filing of the amended complaint. See Cano v. Taylor, 739 F.3d 1214, 1220–21 (9th Cir. 2014) (allowing amended complaint to proceed on new claims that arose prior to the date on which the initial complaint was filed) (emphasis added); Akhtar v. Mesa, 698 F.3d 1202, 1210 (9th Cir. 2012) (allowing amended

5

complaint alleging new claims that arose after the initial complaint was filed).

The original complaint, filed August 23, 2017, contained the same allegations against defendants Wong and Duncan as made in the amended complaint. (See ECF No. 1.) Accordingly, plaintiff is required to have administratively exhausted his claims against defendants Wong and Duncan prior to the time he filed the original complaint on August 23, 2017.[1]

V. Did Plaintiff Fail to Exhaust Administrative Remedies Prior to Filing This Action?

Defendants argue that plaintiff failed to exhaust administrative remedies prior to filing this action. Defendants argue that in order to exhaust his administrative remedies, plaintiff needed to "file and exhaust his health care appeal between July 26, 2017 (the date Dr. Wong allegedly stopped treating his hypertension) and August 23, 2017 (the date he filed the original complaint)." (ECF No. 25-2 at 3.) Defendants argue that plaintiff filed three health care appeals "during this time period," i.e., Appeal Log. No. MCSP SC 17000989; Appeal Log No. MCSP HC 17051814, and Appeal Log No. MCSP HC 17051729. (Id.) Defendants argue that none of these appeals exhausted plaintiff's claims against defendants Wong and Duncan prior to the filing of this action. The undersigned discusses defendants' evidence herein.

Defendants have filed the declaration of S. Walters, the Health Care Appeals Coordinator at MCSP. (ECF No. 25-5.) S. Walters states that plaintiff was housed at MCSP from May 5, 2017 through February 14, 2018. (Id. at 2.) S. Walters states that from July 26, 2017 to August 23, 2017, plaintiff filed three health care appeals with the MCSP Health Care Appeals Office: MCSP SC 17000989, MCSP HC 17051814, and MCSP HC 17051729. (Id.)

Plaintiff signed MCSP HC 17051814 on August 24, 2017. (Id. at 9.) The Health Care Appeals Office received MCSP HC 17051814 on August 28, 2017. (Id. at 2.) This grievance concerned plaintiff's complaint that defendant Duncan discontinued plaintiff's Gabapentin medication on July 26, 2017. (Id.) The appeal was partially granted at the second level of review

---

[1] The undersigned dismissed the original complaint with leave to amend because plaintiff had not pled sufficient facts demonstrating that defendants acted with deliberate indifference. See ECF No. 6 at 4.

6

on December 6, 2017. (Id.) Plaintiff did not submit this appeal for the third level of review. (Id.) MCSP HC 17051814 is not relevant to the instant action because it raised claims unrelated to the claims raised in the instant action.

Plaintiff signed the first level MCSP HC 17051729 on August 13, 2017. (Id. at 25.) The Health Care Appeals Office received MCSP HC 17051729 on August 14, 2017. (Id. at 3.) This appeal concerned plaintiff's request for copies of his health care records. (Id.) Plaintiff withdrew this appeal before it could complete the first level of review, and the appeal was formally closed on September 25, 2017. (Id.) MCSP HC 17051726 is not relevant to the instant action because it raised claims unrelated to the claims raised in the instant action.

S. Walters does not discuss grievance MCSP SC 17000989. This grievance is discussed in the declaration of S. Gates, employed by the California Correctional Health Care Services ("CCHCS") within the Policy and Risk Management Services ("PRMS") division as the Chief of the Health Care Correspondence and Appeals Branch ("HCCAB"). (ECF No. 25-4.) S. Gates states that between July 26, 2017 and August 23, 2017, plaintiff submitted one appeal that was adjudicated and exhausted at the final level of review. (Id. at 4.) The Health Care Appeals and Risk Tracking System ("HCARTS") tracking number for that appeal is MCSP SC 17000989. (Id.) S. Gates states that MCSP SC 17000989 was "initially filed" on August 14, 2017, and the appeal was denied and exhausted at the third level of review on January 11, 2018. (Id.)

A copy of grievance MCSP SC 17000989 is attached to S. Gates' declaration. (Id. at 43.) This grievance raised the claims raised in the instant action. (Id.) Plaintiff signed the first level grievance on July 30, 2017. (Id.) However, in the first level grievance, plaintiff wrote that on August 6, 2017, he became dizzy and blacked out. (Id. at 45.) Plaintiff also wrote that as of August 13, 2017, he had not received his blood pressure medication. (Id.) Thus, it appears that plaintiff signed this grievance after July 30, 2017.

Plaintiff filed MCSP SC 1700989 as an "emergency appeal." (Id.) Emergency appeals are bypassed at the first level of review and receive a second level decision within five working days. See Cal. Code Regs. tit. 15, § 3084.9(a)(1). However, prison officials determined that MCSP SC 17000989 did not involve an emergency and made a notation on the form noting this

7

decision. (ECF No. 25-4 at 43.)

MCSP SC 17000989 was bypassed at the first level of review, apparently because it was deemed a staff complaint. See id. at 41 (Director's Level Decision discussing designation of grievance as staff complaint). See also Cal. Code Regs. tit. 15, § 3084.9(i)(1) (appeals coordinator may bypass first level of review for appeal of an issue that cannot be resolved at the division head such as Associate Warden, etc.).

Prison records indicated that the appeal was received by prison officials at the second level of review on August 14, 2017, after being deemed a staff complaint and bypassing the first level of review. (ECF No. 25-4 at 11.) Prison officials had thirty working days after August 14, 2017 to respond to the grievance. See Cal. Code Regs., tit. 15 § 3084.8(c). On September 25, 2017, i.e., within thirty working days of August 14, 2017, plaintiff received a second level response to this grievance. (Id. at 47.) Plaintiff received his third level response to grievance MCSP SC 17000989 on January 12, 2018. (Id. at 41.)

Plaintiff filed the instant action on August 23, 2017. Therefore, plaintiff failed to exhaust administrative remedies before he filed the instant action.[2]

The undersigned observes that plaintiff could, but does not argue, that prison officials failed to comply with their own rules when they rejected his first level grievance for emergency processing. However, it is prison officials – not this court – who are the arbiters of whether an internal, administrative appeal is properly classified as an emergency appeal. See Donte v. Swingle, 2011 WL 976613, at *5 E.D. Cal. Mar. 16, 2011 (citing relevant regulations); Hoffman v. Palagummi, 2019 WL 582353 at 3 (E.D. Cal.) (Feb. 13, 2019) (citing Donte v. Swingle, supra). Plaintiff might still proceed if he could show that prison officials, by denying his grievance emergency status, thwarted his overall ability to exhaust. See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). But the timing of this lawsuit's filing makes such a showing impossible.

---

[2] Even assuming plaintiff actually signed his first level grievance MCSP SC 17000989 on July 30, 2017, which seems unlikely, and it was received by the Appeals Coordinator on that day, the Appeals Coordinator had thirty working days from that date to respond. See Cal. Code Regs. tit. 15, § 3084.8(c). Thirty working days from July 30, 2017 is September 11, 2017. Plaintiff filed the instant action on August 23, 2017.

8

Plaintiff declined to even wait for the first/second level decision before filing this suit. Thus, he cannot claim to have attempted to exhaust as fully as possible.

In his opposition to the summary judgment motion, plaintiff argues that he exhausted administrative remedies, citing the third level decision he received in grievance MCSP SC 17000989 on January 12, 2018. As discussed above, administrative remedies must be exhausted prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002) (per curiam). Plaintiff exhausted his claims after he filed this action on August 23, 2017.

In his opposition, plaintiff also appears to argue that his transfers between institutions and lack of access to his legal property prevented him from exhausting his administrative remedies. For the reasons discussed herein, this argument is without merit.

As discussed above, plaintiff signed grievance no. MCSP SC 17000989 on July 30, 2017. Court records indicate that plaintiff was housed at MCSP when he filed the original complaint on August 23, 2017 and when he filed the amended complaint on October 16, 2017. Therefore, plaintiff was not transferred before he received the first response to grievance MCSP SC 1700989 on September 25, 2017. The timing of the filing of plaintiff's grievances, as well as plaintiff's ability to file the original and amended complaints, undermine his claim that a lack of access to his legal property prevented him from exhausting administrative remedies. Thus, plaintiff's alleged transfers and lack of access to his legal property did not prevent plaintiff from exhausting administrative remedies or cause plaintiff to file this action before he exhausted administrative remedies as to his claims.

For the reasons discussed above, the undersigned recommends that defendants' motion for summary judgment on the grounds that plaintiff failed to exhaust administrative remedies prior to filing this action be granted.

VI. Motion to Stay Discovery

Defendants request that discovery be stayed pending the disposition of the summary judgment motion. Because the undersigned recommends that defendants' summary judgment be granted, the motion to stay is denied as unnecessary.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to stay (ECF No. 26) is denied;

2. Plaintiff's motion for summary judgment (ECF No. 44) is construed as an opposition to defendants' summary judgment motion; and

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (ECF No. 25) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 7, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/tay1758.sj